**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
GREGORY M. ROYAL,                       :
                                        :  Civil Action No. 07-5234 (RMB)
            Petitioner,                 :
                                        :
      v.                                :        **O P I N I O N**
                                        :
KAREN BALICKI, et al.,                  :
                                        :
            Respondents.                :
_____ :


**APPEARANCES:**

Gregory M. Royal, <u>Pro</u> <u>Se</u>        Laurie A. Corson, Esq.
#71325                          Camden County Pros. Office
South Woods State Prison        25 North 5th Street
215 Burlington Road S.          Camden, NJ 08102
Bridgeton, NJ 08302             Attorney for Respondents

**BUMB**, District Judge

    Petitioner Gregory M. Royal, a prisoner currently confined at South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Karen Balicki and the New Jersey Attorney General.

    For the reasons stated herein, the Petition must be denied.

**BACKGROUND**

1.   Factual Background

As stated in the opinion of the Superior Court of New

Jersey, Appellate Division:[1]

On August 18, 1996 Mildred Ordille, age seventy-
one, was alone in her home in Hammonton.  At about 9:55
a.m. that morning, Ordille was in her bathroom, when
she heard someone yell "Yo."  Ordille ran into her
bedroom and retrieved a shotgun from her closet.  She
was able to load one shell, but ran out of time and
placed it on the bed.  Ordille then heard glass
breaking on her back door.  She went to see what was
going on and saw a "black man running" through her
house.  Ordille described her assailant as wearing a
baseball cap, a white sweatshirt, "pointy black shoes"
with no socks and black trousers.  Her assailant was
also carrying a "very big club."  Ordille described the
club as eleven-inches wide and about the same length.
Ordille further described the "club" as square and
tapered at the end so the assailant could hold it.

Her assailant then said to her, "come here in the
parlor."  Ordille was then beaten over the head and
above her left eye.  He continued to beat Ordille,
knocking her to the floor.  As Ordille attempted to get
up, her assailant would knock her to the floor, and
repeatedly hit her in the back of the head.  He then
closed the blinds and removed the knob from the door.
He took out a can of chemicals, and sprayed her in the
eyes.  She described the can of chemicals, recalling it
was pint-size black can with a red top.

Ordille then testified that the assailant said to
her, "I want your money first.  Then, I'm going to rape
you; then I'm going to kill you."  Succumbing to his

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

demand for money, she lead the assailant to the
stairwell leading to her attic.  She testified that her
assailant was careful not to touch anything as he made
her retrieve a small metal box containing a white
envelope with about $3200 in small cash bills.  She
gave him the money and then he told her to come
downstairs.  She went downstairs; the assailant told
her to sit on the bed, and said he was going to tie her
down.  He took out a nylon "noose" which was identified
by Ordille at trial.  At this time, Ordille kicked her
assailant outside her bedroom door.  She was able to
get the assailant outside her room, so she closed and
locked the door.  Her assailant pushed on the door, and
slid his foot underneath, in an attempt to re-enter the
bedroom.  She was able to lock the door and keep her
assailant out.  He was careful not to touch the door
knob.

Ordille testified that she then told her assailant
he could come back in, "Now I have the gun loaded."
Ordille waited until she believed her assailant had
left her house, and then opened the door to retrieve
the phone from the hallway.  She then phoned 9-1-1.

(Respondents' Appendix ("Ra") 18; Opinion of the Superior Court

of New Jersey, Appellate Division, State v. Royal, A-4640-98T4

(Apr. 18, 2002), at pp. 4-6).

2.   Procedural Background and Evidence Presented at Trial

On January 30, 1997, a Camden County Grand Jury returned an

indictment against Petitioner, charging him with first-degree

armed robbery, contrary to N.J.S.A. 2C:15-1 (count one); second-

degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(1)

(count two); two counts of third-degree aggravated assault,

contrary to N.J.S.A. 2C:12-1b(2) (counts three and four); third-

degree terroristic threats, contrary to N.J.S.A. 2C:12-3b (count

five); second-degree burglary, contrary to N.J.S.A. 2C:18-2

(count six); first-degree kidnapping, contrary to N.J.S.A. 2C:13-1b(1) (count seven); third-degree criminal restraint, N.J.S.A. 2C:13-2a (count eight); third-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4d (count nine); fourth-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5d (count ten); and third-degree aggravated criminal sexual contact, contrary to N.J.S.A. 2C:14-3a (count eleven).

Following pretrial motions, including a motion to dismiss the indictment, motion to sever, and Miranda hearings, on November 4, 1998 petitioner's trial by jury commenced.  On November 13, 1998, Petitioner was found guilty of counts one through ten (count eleven had been dismissed on motion of the State).  He was sentenced on January 25, 1999, pursuant to an extended term, to an aggregate sentence of life, with a 25-year period of parole ineligibility.

As set forth by the Appellate Division, the following evidence was presented at trial:[2]

> Several days after the incident, [Detective John] Leahy went to Ordille's home and showed her six photos, one of which was the defendant.  Ordille was unable to make an identification.

> The police had no suspects until Elwood Leftridge, a friend of defendant's came forward on September 23, 1996.  He told police that he had information about the robbery.  Leftridge testified for the State.  The

---

[2]  This summary of the evidence is not all-inclusive.

State questioned Leftridge about his criminal history. Leftridge had been convicted and sentenced to two years probation in August 1997 for escape.  At the time of the trial, Leftridge was awaiting sentence for a charge of burglary and anticipated receiving a five-year sentence.  He also stated he was not promised anything in exchange for his testimony.  Leftridge identified the defendant as Gregory Royal.

Leftridge testified that he knew defendant socially.  Leftridge first learned of the robbery from defendant on the day after the incident happened. Defendant told Leftridge he had done a "sting," which meant something illegal.  Defendant was scared and tired and wanted to get out of the area because of what he had done.  Leftridge described defendant's vehicle as a Jeep Cherokee with the license plate "COOL IT." Leftridge then told the judge what defendant had told him about the robbery . . . .

* * *

Leftridge then stated that defendant had a two-by-four that he used to hit Ordille.  Defendant told Leftridge he hit Ordille across the back of her head at least twice and then she complied with his demand for money.  Ordille retrieved the money from the attic. Defendant told Leftridge that he obtained $2000, but a week later defendant said it was $3000.  After leaving the house, defendant then proceeded back to his Jeep through the woods.  Defendant told Leftridge that he discarded the two-by-four on his way back to the Jeep.

Leftridge also testified that defendant had told him he had parked his Jeep at his friend's house, whose last name is "Revels."  Leftridge then stated that knowing what defendant had done was on his conscience, so he told his neighbor, Officer Grundige, he had information about the robbery.

* * *

[Leftridge cooperated with police and wore a wire and taped a conversation with Royal in which Royal implicated himself in the robbery].

* * *

[Ralph Revels testified for the State.] On the morning of the incident, Ralph woke up at 10:30 and saw defendant's Jeep parked in his yard.  About ten minutes

5

later, defendant came running across a blueberry field
next to Ralph's house, carrying a brown paper bag.
Ralph said the blueberry field is not anywhere near
Ordille's home.  Defendant was "huffing and puffing"
and came in and sat on Ralph's couch for a short time.
Ralph did not recall a conversation with defendant.
Ralph testified that defendant was wearing black pants
and a black tank top.  Defendant then left in his Jeep.

* * *

. . . [Royal was interviewed by Investigator Kevin
Kellejan on January 16, 1997.  He was advised of his
rights.] Defendant agreed to give Kellejan and Beckett
a taped statement. . . .

* * *

     [Four taped statements were eventually taken from
Royal, all of which were played for the jury.] In the
fourth statement given to Kellejan and [Sergeant]
Beckett, defendant implicates himself in the robbery.
Defendant stated that he and Carl Williams (an older
brother to Revels) went to a house and robbed a lady.
Defendant stated he needed the money for cocaine.  They
gained entrance through the back door by breaking in a
square window on the door.  Defendant claimed they
thought Ordille was out walking, but when they entered,
she surprised them.  Williams grabbed Ordille and
wrestled with her.  Defendant ran and began to look in
drawers for money while Williams subdued Ordille.
Defendant obtained money after Ordille told them the
money was in a metal box in the atic.  Defendant
admitted they brought the "flex cuff" to the house.
Williams had them in a box in his trunk.  Defendant
denied hurting Ordille, and if she was injured, it
happened when he was upstairs getting the money, and
Williams was alone with her.  When defendant last saw
Ordille she was running to her bedroom.  Defendant
stated he had received a few scratches on his legs from
running through the woods back to the Revels home.  On
that day, defendant stated he was wearing red sweat
pants, a 49er hat and a gold-colored sweatshirt.
Defendant actually left the house with the money,
approximately $4000.  Williams and defendant split the
money between them.  They went to Williams's house
(actually Revels' house) where defendant's Jeep was
parked.  The defendant and Williams then drove to
Camden.

Cheryl Green, defendant's sister, testified for the defendant. [She provided an alibi defense for Royal.]

* * *

Defendant testified. [With regard to the taped Leftridge conversation] Defendant admitted that it was his voice on the tape of October 2, 1996 talking to Leftridge, but that the tape did not show his body language, and that in fact, he was disgusted with the accusation that he had participated in the burglary and that he received $2000.  He claimed his statement to Leftridge was in anger and was a lie.

Defendant also testified he was close with Ralph Revels, and frequented his home, often unannounced. Defendant agreed with Green's testimony regarding his activities the night before the robbery.

* * *

[Defendant also testified that his statements to the police were coerced in that he was assaulted by the officers.  Officers testified on rebuttal that they did not use any weapons on Royal and did not witness any assault on Royal.]

(Ra18 at 9-17).

Petitioner appealed the conviction and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  On April 18, 2002, the Appellate Division affirmed Petitioner's conviction and sentence.  The New Jersey Supreme Court denied certification on July 16, 2002.

In July of 2002, Petitioner filed a state petition for post-conviction relief ("PCR").  Counsel was appointed, and after an evidentiary hearing, the PCR court denied relief on January 7, 2005.  Petitioner appealed the denial of PCR relief, and the

Appellate Division affirmed the denial on December 26, 2006. The New Jersey Supreme Court denied certification on March 15, 2007.

Petitioner filed this habeas petition on October 26, 2007. On November 2, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). In response to the Mason order, Petitioner filed an Amended Petition on December 3, 2007. An order to answer was issued and Respondents filed an answer to the petition and state court record on April 24, 2008. Petitioner filed a reply to the answer on May 29, 2008.[3]

Petitioner asserts the following twenty-nine grounds for relief in his amended habeas petition (docket entry 5):

1. The Court erred when it refused to grant the defendant's motion to dismiss the indictment.

2. The defendant was not provided a fair and impartial jury, and thus was denied a fair trial and due process of law.

3. The Miranda motion to suppress statements coerced from the defendant was improperly denied by the Court.

4. The defendant's conviction was against the weight of the evidence and it clearly and convincingly appeared that there was a denial of justice under the law.

5. The sentence given the defendant was excessive.

_____

[3] Petitioner filed a motion for leave to file an overlength brief, which was granted on June 4, 2008, after Petitioner filed his reply to the answer. Petitioner has not since filed any additional briefs. Further, the Court notes that Respondents filed a motion to seal certain documents, which was granted on June 6, 2008.

6.  Defendant's indictment should have been dismissed and the new trial granted because of <u>Brady</u> violation material evidence.

7.  The court erred when it refused defendant the right to confront his accuser.

8.  The court erred when it allowed the state to alter and delete portions of defendant's statement.

9.  The state committed "governmental misconduct" denying defendant his Sixth Amendment right to a fair trial.

10.  The prosecutor did not provide a writ, or authorization for the detectives to remove [defendant] from the county jail to obtain the coerced statement.

11.  Court erred in its failure to give an instruction on cross-racial identification to the jury.

12.  The state withheld several pieces of material that was crucial evidence in the case.

13.  Defense attorney was ineffective, incompetent, and inadequate.

14.  The defendant was denied his right to the effective assistance of counsel, right to a fair trial, and due process since trial counsel did not properly represent him after he filed an ethics complaint against counsel.

15.  The defendant was denied his right to the effective assistance of counsel, right to a fair trial, and due process since trial counsel failed to introduce evidence that would lead the jury to believe that his statements to representatives of the office of prosecutor were incredible.

16.  The defendant was denied his right to the effective assistance of counsel, right to a fair trial, and due process since trial counsel failed to adequately attack the credibility of Elwood Leftridge.

17.  The defendant was denied his right to the effective assistance of counsel, right to a fair trial, and due process since trial counsel failed to object to the statement attributed to Elwood Leftridge's wife as hearsay.

18. The defendant was denied his right to the effective assistance of counsel, right to a fair trial, and due process since trial counsel failed to argue in closing argument that inconsistent descriptions of his van were made.

19. The defendant was denied his right to the effective assistance of appellate counsel, right to a fair trial, and due process since appellate counsel failed to argue that the third and fourth statements given by the defendant to law enforcement officers violated his right to remain silent.

20. The defendant was denied his right to the effective assistance of counsel, right to a fair trial, and due process since trial counsel and appellate counsel failed to argue that the defendant was entitled to Gap Time credits and/or failed to award him the proper amount of jail credits.

21. The defendant was denied his right to due process since the court factually determined that the defendant committed a crime of violence and thereby caused an increase in his VCCB penalty.

22. The defendant was denied his rights when he received an illegal sentence since the court applied aggravating factors in determining to enhance defendant's sentence.

23. Trial counsel was ineffective for failure to investigate, properly argue, and/or present to the court a number of issues [Twenty-one issues listed in amended petition].

24. Sentencing counsel was ineffective.

25. Ineffective assistance of appellate counsel for failing to raise the issue of prosecutorial misconduct.

26. Ineffective assistance of PCR counsel for failing to raise the issues petitioner presented in his verified petition to the PCR.

27. Newly discovered evidence confirms that the prosecutor and trial counsel were in collusion by suppressing exculpatory, material evidence favorable to petitioner.

28. Prosecutor committed "misconduct" by working in collusion with petitioner's parole officer to hold petitioner in jail

illegally, for 3 months, even after the N.J. Parole Board ordered petitioner released.

29.  Defendant was illegally sentenced to an extended term.

(Petition, ¶ 12).

<u>**DISCUSSION**</u>

**A.  <u>Standards Governing Petitioner's Claims.</u>**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the

11

state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and nevertheless
arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
See id. at 409.  In determining whether the state court's
application of Supreme Court precedent was objectively
unreasonable, a habeas court may consider the decisions of
inferior federal courts.  See Matteo v. Superintendent, 171 F.3d
877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  See Chadwick v.

12

Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000); see also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d

Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert.</u> <u>denied</u>, 399 U.S. 912 (1970).

**B.   Claims Regarding Trial Court Errors (Grounds 1, 3, 7, 8).**

In Ground 1 of his petition, Petitioner argues that the trial court erred when it refused to grant his motion to dismiss the indictment.  Petitioner states that the court "knew that defendant was arrested on an illegal arrest warrant and later charged for a different offense." (Amended Petition, docket entry 5, ¶ 12A).

In Ground 3 of his petition, Petitioner argues that the trial court improperly denied his <u>Miranda</u> motion.[4]  In Ground 7 of his petition, Petitioner contends that he was not permitted to confront an accuser who gave a 12-page statement accusing him of the crime.  (Am. Pet., ¶¶ 12C, 12G).

Finally, in Ground 8, Petitioner states that the trial court erred in allowing the state to alter his statement to delete portions concerning parole officers searching his home and accusing him before he was a suspect.  (Am. Pet., ¶ 12H).

The Appellate Division reviewed these claims on direct appeal, in the context of New Jersey state law, and rejected them.  (Ra 18).

Petitioner's allegation that the trial court erred in refusing to grant his motion to dismiss the indictment does not

---

[4]   <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

14

warrant habeas relief.  A claim as to the validity of a state indictment, as opposed to the fairness of a trial, does not typically rise to the level of a constitutional deprivation because any such claims alleging error in a state grand jury proceeding are rendered harmless by the subsequent guilty verdict by a petit jury.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); see also United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Eniqwe, 17 F. Supp.2d 390, 393 (E.D. Pa. 1998), aff'd, 248 F.3d 1131 (3d Cir. 2000), cert. denied, 531 U.S. 1185 (2001).

In this case, Petitioner presented his arguments concerning the defects in the grand jury proceedings to the state courts in a motion to dismiss, and the arguments were rejected.  (Rta1 at pp. 2-11; Ra18 at pp. 19-25).  Furthermore, the petit jury's eventual conviction of Petitioner renders harmless petitioner's otherwise unsupported claim of irregularities and prosecutorial misconduct in the grand jury proceedings.  Accordingly, this claim for habeas relief will be denied.

Petitioner's allegation that the trial judge erred in finding that the statement was voluntary, and erred in denying the Miranda motion (Ground 3), lacks merit.  The state courts invoked the correct law, discussed the "totality of the circumstances" (Rta3 at pp. 103-110; Ra18 at pp. 29-33), held a pretrial hearings pursuant to Miranda, and reasonably determined

the facts in light of the evidence presented.  Based on a review
of the record, including the pretrial Miranda hearing, this Court
can fathom no reason to upset the findings of the state court.[5]
See Fahy v. Horn, 516 F.3d 169, 196 (3d Cir. 2008) (state court
decision to reject petitioner's request for suppression was not
"contrary to" Supreme Court precedent, as state court adhered to
the "totality of circumstances" standard; further, "the
suppression court was entitled to make the credibility
determination that it did in the face of conflicting testimony,
and it applied the correct law to its findings of fact and came
to a reasonable conclusion").

In Ground 7, Petitioner argues that the state failed to
present Gerald Revels at trial, denying his right to confront his
accuser.  The Appellate Division reviewed this claim and rejected
it, holding:

> Defendant contends that the State's failure to
> present Gerald Revels at trial, denied his "right to
> confront his accuser."  Defendant relies on a statement
> given by Revels to police.  This statement was not
> produced at trial, nor did any witness testify as to
> the existence of such statement.  Defendant asserts he
> had a right to confront this witness and question him
> on cross-examination.
>
> "Testimony relating to inculpatory information
> supplied by a co-defendant or other non-testifying

---

[5]   Details concerning the Miranda hearings are located in
the Transcript of the Motion Hearing, at Rta2 and Rta3 pp. 5-102,
with the motion judge's decision located at pp. 103-110; and the
Appellate Division decision affirming the motion judge's decision
at Ra18 pp. 29-33.

16

witness identifying the defendant as the perpetrator of
a crime deprives the accused of his or her
constitutional rights." If the State had produced
Revels's statement, or had one of its other witnesses,
such as one of the law enforcement personnel testified
as to this statement, then defendant would be correct
in his assertions. However, the State never produced
the statement, nor did it produce any inculpatory
testimony based on this statement. We reject
defendant's claim that his Sixth Amendment right was
violated.

(Ra18 at pp. 40-41)(internal citations omitted).

Under federal law, the Sixth Amendment's Confrontation
Clause provides that, "In all criminal prosecutions, the accused
shall enjoy the right ... to be confronted with the witnesses
against him." Recently, the Supreme Court has traced the
historical roots of the Confrontation Clause and has
distinguished the application of the Confrontation Clause to
different types of hearsay evidence. <u>See</u> <u>generally</u> <u>Crawford v.</u>
<u>Washington</u>, 541 U.S. 36 (2004). In <u>Crawford</u>, the Supreme Court
stated:

> Where nontestimonial hearsay is at issue, it is wholly
> consistent with the Framers' design to afford the
> States flexibility in their development of hearsay law
> -- as does [<u>Ohio v. ]Roberts</u>, [448 U.S. 56, 66 (1980),]
> and as would an approach that exempted such statements
> from Confrontation Clause scrutiny altogether. Where
> testimonial evidence is at issue, however, the Sixth
> Amendment demands what the common law required:
> unavailability and a prior opportunity for cross-
> examination. We leave for another day any effort to
> spell out a comprehensive definition of "testimonial."
> Whatever else the term covers, it applies at a minimum
> to prior testimony at a preliminary hearing, before a
> grand jury, or at a former trial; and to police
> interrogations. These are the modern practices with

closest kinship to the abuses at which the
Confrontation Clause was directed.

Crawford, 541 U.S. at 68 (footnote omitted).  However, in this
case, as noted by the Appellate Division, Gerald Revels's
statement was not produced at trial, or referred to by any
witnesses.  Thus, the Crawford Confrontation Clause issue does
not come into effect.

In Ground 8, Petitioner argues that the trial court erred in
allowing the State to redact certain statements concerning parole
officers from police reports.  However, it is clear from the
record that the redactions were agreed to by both parties at
trial to prevent admission of information to jurors of
Petitioner's status as a parolee.  (Ra18 at pp. 41-42).

In these grounds concerning errors by the trial court,
Petitioner has not demonstrated that the actions of the state
courts "resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States," or
"resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  Accordingly, these grounds for a
writ of habeas corpus will be denied.

C.   **Claim Regarding Impartial Jury (Ground 2).**

Petitioner argues in Ground 2 that he was not provided an
impartial jury, because a juror stated that she had known a state

18

witness for over 10 years and could not be impartial.  (Am. Pet., ¶ 12B).

The Appellate Division examined this claim on direct appeal. As noted by the Appellate Division, during jury selection, the following colloquy occurred:

| | |
|---|---|
| Court: | Is there any question to which you would have answered yes? |
| Juror: | Yes. |
| Court: | And which question was that? |
| Juror: | I know one of the witnesses. |
| Court: | And is it a person that you know well? |
| Juror: | Yeah, for approximately about 9 or 10 years. |
| Court: | Ten years.  If that person were actually called to the witness stand and testified, would you be able to evaluate his testimony or her testimony as fairly and as impartially as you would if you didn't know the person? |
| Juror: | I think I could. |
| Court: | You think you might or – |
| Juror: | I could.  I think I could. |
| Court: | Is that something your [sic] pretty confident of? |
| Juror: | I'm pretty sure, yes. |

* * *

| | |
|---|---|
| Court: | Juror in seat number 14, I wanted to follow-up about with the thing that you mentioned, the witness that you've known for about 10 years.  Is that a law enforcement witness or a non-law enforcement witness? |
| Juror: | Non-law enforcement witness. |

(Ra 18 at pp. 25-26).  The Appellate Division continued to reject this claim, because defense counsel did not object to the juror remaining on the panel, and because of deference to the trial

court's credibility determination of the juror.  Further, defense counsel did not use a peremptory challenge to excuse the juror at the end of jury selection, despite the fact that there were two unused challenges remaining.

Under federal law, a criminal defendant has a right to an impartial jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.  The right to an impartial jury is applicable to the States through the Fourteenth Amendment.  See Morgan v. Illinois, 504 U.S. 719, 726 (1992).  Even though the Constitution requires an impartial jury, the Supreme Court has not dictated bright-line rules for the adequacy of the voir dire.  Absent allegations of racial or ethnic bias or a capital punishment issue, the Supreme Court consistently has held that trial judges in criminal matters are afforded substantial discretion in determining whether a juror is fit to make an unbiased determination.  See Risatano v. Ross, 424 U.S. 589, 595 (1976); and Mu'min v. Virginia, 500 U.S. 415, 422 (1991).  Trial judges are afforded such discretion because "the determination of impartiality, in which demeanor plays such an important part, is particularly in the province of the trial judge." Risatano, 424 U.S. at 594.  Furthermore, jury selection is a factual determination made by the trial judge, and therefore is subject to a presumption of correctness during federal habeas review.

See Wainwright v. Witt, 469 U.S. 412, 428 (1985); and 28 U.S.C. §
2254(e)(1).

In this case, the trial judge asked the juror in question if
she could be impartial, and the juror responded that she was
"pretty sure" she could be.  Defense counsel did not object or
use a peremptory challenge to excuse the juror.  This Court sees
no reason to disturb the finding of the trial judge, as the trial
judge's decision to allow the juror to remain on the jury after
the juror's revelation about her knowledge of the witness was not
unreasonable and did not violate federal law.  This Court
concludes, based on the record and petitioner's lack of evidence
as to jury bias, that petitioner has not shown, as required by 28
U.S.C. § 2254(d), that the actions of the trial court "resulted
in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  Accordingly, this ground for a writ of habeas
corpus will be denied.

**D.   Claim that Verdict Against Weight of Evidence (Ground 4).**

Petitioner claims in Ground Four that the verdict was
against the weight of the evidence, and that the trial court
provided jurors with the instruction on sufficiency of evidence,

as opposed to the weight of evidence.  (Am. Pet., ¶ 12D).  On direct appeal, Petitioner argued that he was entitled to a new trial because the victim was unable to identify him, and because of the alleged improprieties associated with his statements.  (Ra 18 at p. 34).

The Appellate Division rejected this claim, finding:

> The trial judge reviewed the evidence presented during the trial, and observed that the jury had the opportunity to evaluate defendant's voice on the taped statements to the police.  This allowed the jury to determine if the defendant was confessing to the crime.  Further, the judge properly concluded that the jury was entitled to determine the credibility of witnesses, as it was instructed.  The judge concluded the verdict was not against the weight of the evidence, and denied defendant's motion.
>
> Here, the evidence presented at trial not only included statements of witnesses inculpating defendant, but defendant's own statements that he was one of the assailants who broke into and robbed Ordille's home.  Further, the mere fact that Ordille did not identify defendant and [sic] does not require reversal of a conviction.  The jury heard Ordille's description of the defendant and came to their own conclusion about her ability to identify defendant.  We see no potential for a miscarriage of justice here.

(Ra 18 at p. 37).

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Here, the evidence, including Petitioner's own statement made to the police, the testimony of Leftridge, and the testimony of Revels, supports the conviction.  The fact that Petitioner does not agree with the jury's finding that the state witnesses were credible, and chose not to believe Petitioner's defense, does not remotely satisfy the standard for finding that the verdict is not supported by sufficient evidence.  Petitioner is not entitled to the writ with respect to this claim.

**E.    Claims Regarding Sentence (Grounds 5, 21, 22, 29).**

Petitioner argues that his sentence was excessive because he was subjected to an "extended term" (Am. Pet., ¶¶ 12E, 12 CC); his VCCB monetary penalty[6] was increased when the court factually determined that his crime was violent (Am. Pet., ¶ 12U); and aggravating factors were determined by the court to enhance his sentence (Am. Pet., ¶ 12V).  Petitioner's language in asserting

---

[6]  The "Victims of Crime Compensation Board" (VCCB) penalty is a fee assessed at the time of sentencing upon a person convicted of a crime of violence.  See N.J.S.A. 2C:43-3.1a(1).

these sentencing claims suggests that the extended term, and the increase in the fine and the finding of aggravating factors conflicts with the dictates of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." <u>See Grecco v. O' Lone</u>, 661, F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  <u>See Pringle v. Court of Common Pleas</u>, 744 F.2d 297, 300 (3d Cir. 1984).  <u>See also</u> 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).  Petitioner's claims are based upon the Sixth Amendment right to trial by jury.

The Appellate Division examined Petitioner's sentencing claims on direct appeal and found that the trial judge did not abuse his discretion in sentencing Petitioner, and in imposing aggravating factors.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

24

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 302 (internal quotations omitted).  Most recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

In <u>State v. Natale</u>, 184 N.J. 458 (2005), the New Jersey Supreme Court evaluated the constitutionality of the New Jersey sentencing scheme in light of the <u>Apprendi</u> line of cases.

> Our Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term.  Accordingly, the "statutory maximum" for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive sentence.

<u>Natale</u>, 184 N.J. at 484.  Because the Code's system allows for sentencing beyond the statutory maximum presumptive term, the New Jersey Supreme Court found the state sentencing system unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms.  "Without presumptive terms, the 'statutory maximum'

authorized by the jury verdict or the facts admitted by a
defendant at his guilty plea is the top of the sentencing range
for the crime charged, e.g., ten years for a second-degree
offense." Natale, 184 N.J. at 487 (citation omitted).  The
Supreme Court of New Jersey held that the rule it announced in
Natale is applicable retroactively only to cases in the direct
appeal pipeline as of the date of that decision, August 2, 2005.
Natale, 184 N.J. at 494.  Petitioner had already concluded his
direct appeals by the date of the Natale decision; thus, the
Natale decision did not entitle him to relief.

Similarly, the Court of Appeals for the Third Circuit
generally has held that the rules announced in the Apprendi line
of cases are not applicable retroactively to cases on federal
collateral review.  See Lloyd v. United States, 407 F.3d 608,
615-16 (3d Cir. 2005)(holding that Booker does not apply
retroactively to initial § 2255 motions where the judgment was
final as of January 12, 2005); In re Olopade, 403 F.3d 159 (3d
Cir. 2005) (finding that the decision of the Supreme Court in
Booker does not apply retroactively to cases on collateral
review); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert.
denied, 540 U.S. 977 (2003) (holding that Apprendi does not apply
retroactively to cases on collateral review); In re Turner , 267
F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply
retroactively to cases on collateral review).  Thus, the

Appellate Division's decision is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Petitioner is not entitled to relief on these claims.[7]

**F.   Claims Regarding Prosecutorial Misconduct (Grounds 6, 9, 10, 12, 27, 28.**

In Grounds 6, 12, and 27, Petitioner argues that the prosecution withheld exculpatory evidence in violation of <u>Brady</u>[8] concerning his arrest reports and other police reports, and the redacting of his statement.  (Am. Pet., ¶¶ 12F, 12L, 12AA).  In Ground 9, Petitioner alleges that the state committed "governmental misconduct" by "allowing the detectives to remove the defendant from the county jail, in essence kidnap him, without counsel present, to obtain a coerced statement."  (Am. Pet., ¶ 12I).  In Ground 10, Petitioner contends again that the state erred in removing him from county jail without a writ. (Am. Pet., ¶ 12J).  In Ground 28, Petitioner argues that the prosecutor committed misconduct in working in collusion with Petitioner's parole officer to hold him in jail illegally for three months "on a falsified 'dirty urine,' until they had enough to get an indictment."  (Am. Pet., ¶ 12BB).

---

[7]  Further, Petitioner's claim regarding his VCCB penalty will be denied, as a challenge to restitution payments is insufficient to invoke habeas jurisdiction.  <u>See</u> <u>Obado v. New Jersey</u>, 328 F.3d 716, 718 (3d Cir. 2003).

[8]  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Concerning the <u>Brady</u> claims (Grounds 6 and 12), Petitioner argues that the state withheld material evidence.  In Ground 6, Petitioner argues that "the Prosecution knew they had exculpatory evidence and they withheld it from the defense."  (Am. Pet., ¶ 12F).  In Ground 12, Petitioner argues that "the state withheld proper arrest warrants and police reports that would support defendant's version of events."  (Am. Pet., ¶ 12L).  As to Petitioner's claims that the state withheld evidence, the Appellate Division found:

> Defendant also claims the State withheld material evidence.  Specifically, defendant asserts the State failed to present (1) the full contents of the "police wire;" (2) police reports allegedly showing that defendant's parole officer, allegedly engaged in a conspiracy with the prosecution, broke into defendant's home to assist in making defendant a suspect; (3) and that an investigation was ongoing into whether defendant was beaten by police in eliciting his confession.  Defendant testified to all of these claims at the <u>Miranda</u> hearing.  The trial judge found all baseless and believed defendant was untruthful.  Further, much of the above "materials" are outside of the record, and are not appropriate for consideration on this appeal.

(Ra18 at p. 43-44).

In Petitioner's brief, Petitioner argues that "exculpatory" evidence, which was not described in detail by Petitioner, was withheld from the grand jury.  However, under United States Supreme Court precedent, there is no duty imposed upon a state by the United States Constitution to present exculpatory evidence to a grand jury.  See <u>United States v. Williams</u>, 504 U.S. 36, 55

28

(1992); see also United States v. Gomez, 237 F.3d 238, 241-42 (3d Cir. 2000); Baylson v. Disciplinary Bd of Supreme Ct of Penn., 975 F.2d 102, 110-11 (3d Cir. 1992).  Therefore, based on the record Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Regarding Ground 12 concerning police reports and warrants, this Court agrees with the Appellate Division that these claims were examined in the course of Petitioner's Miranda hearing and were found to be baseless and untruthful.  Petitioner has not demonstrated that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, these grounds for a writ of habeas corpus will be denied.

Concerning Grounds 9 and 10, wherein Petitioner argues that
the state committed misconduct by removing him from county jail
without counsel present (Ground 9) and without a writ (Ground
10), the Appellate Division examined this claim, and found:

> . . . defendant maintains that his confession was
> not voluntary and was coerced after he was "beaten" and
> forcibly taken from the County Jail.  The judge
> determined in the <u>Miranda</u> hearing, . . ., that
> defendant's "version" of what occurred was not reliable
> or truthful.  The trial judge found defendant's
> statement was voluntary . . . .

(Ra18 at p. 42).  This Court agrees with the Appellate Division,
that this claim was examined in the course of the <u>Miranda</u>
hearing.  Further, Petitioner's claim concerning the allegation
that he was removed without a writ does not concern this habeas
petition, as it does not demonstrate that Petitioner is now in
custody, under this criminal conviction, in violation of federal
law.

With regard to the redaction of his statement (Ground 27),
Petitioner argues: "Evidence has come to light that shows that
trial counsel assisted the prosecutor in redacting all documents
to delete all references to the part played by the parole officer
in petitioner's arrest, and keeping evidence from being produced
at trial that could have aided the petitioner in his defense."
(Am. Pet., ¶ 12AA).  The Appellate Division examined this
argument and found:

> Defendant asserts that the State redacted portions
> of his statements and thus, the statements were changed

30

to bolster or give weight to the State's arguments. Prior to having the statements played before the jury, the defendant and defense counsel listened to each tape, and consented to the alterations.  When defendant was actually testifying on cross-examination, he referred to the statements as altered.  At a sidebar discussion, the State argued to the judge that these statements were not only altered with defendant's approval, but at his request.  On cross-examination, defendant was then asked if he understood that the redacted portions of his statement do not pertain to this incident.  Defendant testified that was his understanding.  Defendant also testified that the statements accurately represent what he told police.

Defendant cannot now argue that he did not consent to the portions of the taped statements omitted, when the colloquy between defense counsel, the State, and the judge establish that these statements were altered at defendant's own request.  Defendant's statement before redaction contained references to his parole officer, which, if not omitted, may have been prejudicial to him.  Defendant's claim is meritless and no basis for reversing his conviction.

(Ra 18 at pp. 41-42).

This Court agrees with the Appellate Division and finds that Petitioner, who requested and consented to the redaction, cannot now claim that the redaction warrants habeas relief.  This claim is thus denied.

## G.   Claim Regarding Jury Charge (Ground 11).

In Ground 11, Petitioner argues that the trial court erred in failing to give an instruction to the jury on cross-racial identification.  Petitioner states that the court knew that the victim was confused on whether Petitioner was black or Hispanic, and did not instruct the jury on cross-racial identifications. (Am. Pet., ¶ 12K).

The Appellate Division examined this claim, finding:

Defendant concedes that defendant was not identified by the victim, but argues the identification was such a "major issue" that the cross-racial instruction should have been given.  First, defendant's trial predated State v. Cromedy, 158 N.J. 112 (1999).  Nonetheless, the Court in Cromedy urged that "a proper identification jury instruction be given when that issue is critical in the case; an dour review of the professional literature of the behavioral and social sciences, we hold that a cross-racial identification, as a subset of eyewitness identification, requires a special jury instruction in an appropriate case."  Id. at 131.

Here, there was a [sic] no "eyewitness identification" that would require a special jury instruction.  Further, identification was not a critical issue in this case, as the State based its case on defendant's multiple confessions.  The judge properly gave the jury an identification charge.  We find the defendant's claim meritless.

(Ra 18 at p. 43).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

[t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very

32

> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

In this case, the jury charges did not wrongly describe the

burden of proof.  Nor did the charge implicate due process

concerns.  The state courts did not find any error under state

law with the charges, and this Court cannot ascertain any error

that would rise to the level of a Constitutional deprivation.

In this case, a review of the record and the jury charge

reveals that Petitioner has not demonstrated that his entire

trial and conviction was so prejudiced by the lack of the cross-

racial identification charge as to violate the principles of

fundamental fairness and due process.  There was ample evidence
against Petitioner to justify his conviction, including
Petitioner's own statements.  As noted by the Appellate Division,
there was no identification by the victim in this case.
Petitioner's conviction was based on a credibility determination
by the jury, who chose to believe the state's witnesses over
Petitioner's version of events.  Petitioner's conviction was
neither fundamentally unfair, nor violated due process.  This
ground for relief will be denied.

**H.   Claims of Ineffective Assistance of Counsel (Grounds 13-20, 23-26).**

Petitioner asserts various claims of ineffective assistance
of trial and appellate counsel, including: counsel was
ineffective, incompetent and inadequate (Am. Pet. ¶ 12M); trial
counsel did not properly represent him after he filed an ethics
complaint against counsel (Am. Pet., ¶ 12N); trial counsel failed
to introduce evidence that would lead the jury to believe that
his statements to the prosecutor were incredible (Am. Pet., ¶
12O); trial counsel failed to adequately attack the credibility
of Elwood Leftridge (Am. Pet., ¶ 12P); trial counsel failed to
object to the statement attributed to Elwood Leftridge's wife as
hearsay (Am. Pet., ¶ 12Q); trial counsel failed to argue in
closing argument that inconsistent descriptions of his van were
made (Am. Pet., ¶ 12R); appellate counsel failed to argue that
the statements to law enforcement officers violated his right to

34

remain silent (Am. Pet., ¶ 12S); trial counsel and appellate counsel failed to argue the amount of jail credit he was entitled to (Am. Pet., ¶ 12T); trial counsel failed to present to the court a number of issues (Am. Pet., ¶ 12W); sentencing counsel was ineffective (Am. Pet., ¶ 12X); appellate counsel failed to raise the issue of prosecutorial misconduct (Am. Pet., ¶ 12Y); and that PCR counsel was ineffective (Am. Pet., ¶ 12Z).[9]

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

---

[9]   Petitioner's claim that PCR counsel was ineffective is not cognizable on habeas review and will be dismissed. See 28 U.S.C. § 2254(i).

counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense. See Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The reviewing court must evaluate the effect of any errors in light of the totality of the evidence.

36

See id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See

37

<u>Buehl v. Vaughn</u>, 166 F.3d 163, 173-74 (3d Cir.), <u>cert.</u> <u>dismissed</u>, 527 U.S. 1050 (1999).

In this case, the state courts examined Petitioner's ineffective assistance claims in the course of Petitioner's PCR petition.  Repeatedly citing <u>Strickland</u>, the Appellate Division rejected Petitioner's ineffective assistance of trial and appellate counsel claims.  (Ra 35).  The Appellate Division relied upon the PCR court's ruling, set forth in transcripts provided by Respondents Rta15, Rta16, and Rta17.  This Court will not copy the PCR court's rulings into this Opinion.  However, a review of the record demonstrates that Petitioner was not denied effective assistance of counsel.

Petitioner's claims that counsel did not properly represent him are without merit.  As to the claims that counsel was ineffective for failing to adequately attack Leftridge, as the PCR court pointed out, "the tape was extremely damning.  And attacking the credibility I find of Elwood Leftridge would not have made any difference at all." (Rta16 at p. 51).  This Court, in reviewing the transcript of Leftridge's cross-examination, finds that counsel was competent, and adequately tried to discredit Leftridge's testimony.  (Rta6 at pp. 28-53).   If Petitioner argues that counsel did not adequately attack the credibility of Leftridge by bringing up an incident which

involved Royal being arrested on a drug charge, this Court finds
that it was due to sound trial strategy.

Other claims by Petitioner that counsel was ineffective,
including his claim that counsel failed to object to a statement
as hearsay, failed to introduce evidence that Petitioner's
statements to the prosecutor were incredible, and that Petitioner
did not adequately represent him are without merit.  As the state
courts found, citing Strickland, a review of the record shows
that counsel was competent and did not perform deficiently.
Additionally, the arguments advanced by Petitioner for habeas
relief do not meet the second prong of Strickland in that they
would not have altered the outcome of the trial.  There was
strong evidence against the Petitioner, including Petitioner's
own statements.

Further, a review of the closing argument shows that counsel
went through all of the evidence presented and zealously
advocated for Petitioner, and tried to convince the jury to
believe Petitioner's testimony and tried to discredit the State's
case.  (Rta 9 at pp. 31-52).  This Court finds that counsel did
not perform deficiently, and that the Strickland standard for
habeas relief was not met.

Petitioner's arguments concerning appellate counsel likewise
fail, as counsel did not omit "significant and obvious issues"
and any deficiency would not have resulted in Petitioner's

39

conviction being reversed on appeal.  Appellate counsel did not advance every argument sought by Petitioner, but, as stated, appellate counsel is not required to do so.

Therefore, as the record reveals that the state courts relied on the <u>Strickland</u> standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

### CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: January 20, 2009